FILED
CLERK, U.S. DISTRICT COURT

SEP - 4 2008

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO PAGAN GONZALES, | ) NO. ED CV 08-616-FMC(E) |
|                Plaintiff, | ) |
|     v. | ) MEMORANDUM AND ORDER |
| D. DEXTER, Warden, | ) |
|                Defendant. | ) |

## BACKGROUND

Plaintiff, a state prisoner incarcerated at the Ironwood State Prison ("ISP"), filed this pro se civil rights action on May 15, 2008, against ISP Warden D. Dexter, sued in her individual capacity. On June 11, 2008, the Court issued an Order dismissing the Complaint with leave to amend. On July 3, 2008, Plaintiff filed a First Amended Complaint.

On July 14, 2008, the Court issued an Order dismissing the First Amended Complaint with leave to amend. On August 19, 2008, Plaintiff filed a Second Amended Complaint.

1                        **SUMMARY OF ALLEGATIONS OF ORIGINAL COMPLAINT**

2

3        The original Complaint was not a model of clarity.  Plaintiff

4 alleged that he lost his right eye thirty years ago, has a prosthetic

5 eye, and suffered from permanent visual impairment (Complaint, p. 5).

6 Plaintiff appeared to allege that the heat, weather, wind and

7 brightness of the sun to which he allegedly was exposed at ISP

8 assertedly had injured or will injure his remaining eye, subjecting

9 him to an alleged risk of complete blindness (Complaint, pp. 5, 5(1),

10 6).  Plaintiff appeared to allege Defendant thereby violated

11 Plaintiff's rights under the Eighth Amendment, the Due Process Clause,

12 and the Americans with Disabilities Act, 42 U.S.C. section 12101 et

13 seq. ("ADA") (Complaint, p. 5).  Plaintiff alleged he was a member of

14 the "Armstrong class" (Complaint, p. 5(1)).[1]  Plaintiff also alleged

15 that the prison food was bad and elevated his cholesterol levels, and

16 that prison officials opened or delayed delivery of Plaintiff's mail

17 and took Plaintiff's mail and legal papers (Complaint, pp. 5(1), 5(2),

18 5(4), attached affidavit, p. 1).  Plaintiff generally alleged that the

19 ISP and the prison system were "corrupt" and that prison officials who

20 assertedly handled Plaintiff's complaints covered up the alleged

21 corruption (Complaint, pp. 5(2)-5(4), 6).  Plaintiff sought a

22 "preliminary injunction" transferring Plaintiff to a state prison

23 medical facility at San Luis Obispo or Vacaville (Complaint, p. 6).

24 ///

25 _____

26       [1]     This appears to be a reference to a remedial order
issued in Armstrong v. Davis, United States District Court for
27 the Northern District of California, case number 94-2307-CW.  See
generally Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001), cert.
28 denied, 537 U.S. 812 (2002).

In an affidavit attached to the original Complaint, Plaintiff further requested the Court to order him confined in a single cell. Plaintiff alleged entitlement to this placement because he assertedly was a 50-year-old, one-eyed Puerto Rican with no disciplinary history and no affiliation with Mexican people or gangs (Complaint, attached affidavit, pp. 1-2). Plaintiff contended he needed a single cell for his security because things allegedly were "out of control" at the prison (Complaint, attached affidavit, p. 2).

Exhibits attached to the original Complaint suggested that: (1) Plaintiff allegedly submitted an accommodation request seeking a transfer to a prison medical facility; (2) the request allegedly was denied at the second level of review on the grounds that Plaintiff was not disabled within the meaning of the "Armstrong remedial plan" and that a medical transfer was not warranted because Plaintiff's central visual acuity was 20/20 with corrective lenses; and (3) the subsequent appeal was rejected at the Director's level of review as untimely.[2] Plaintiff appeared to contend prison officials caused Plaintiff's Director's level appeal to be untimely (see Complaint, pp. 5(1)-5(2)).

## SUMMARY OF ALLEGATIONS OF FIRST AMENDED COMPLAINT

The First Amended Complaint not only failed to correct the defects in the original Complaint, but it was even less clear than the

---

[2]   The California Department of Corrections and Rehabilitation provides for a multi-step grievance process. Brown v. Valoff, 422 F.3d 926, 929-30 (9th Cir. 2005); see Cal. Code Regs., tit. 15, § 3084.5 (describing levels of review).

prior pleading.  Plaintiff alleged that he had a prosthetic eye and
that his alleged vision impairment had been "ignored" (First Amended
Complaint, "Supporting Facts," p. 1).  Plaintiff alleged that
"excessive heat is prejudicial, for Petitioner [sic] of 'only' one
eye[] burning the waves heat this place is desert the temperature is
100 to 120" (id.).  Plaintiff alleged that the heat and brightness of
the sun allegedly caused Plaintiff's vision to blur and allegedly put
Plaintiff at risk of a future injury (id., p. 4).


     Plaintiff also appeared to allege that prison officials held a
classification hearing in Plaintiff's absence (id., pp. 1-2).
Plaintiff alleged prison officials kept Plaintiff's prison grievance
for 81 days, thereby assertedly violating state prison regulations and
Due Process (id., p. 2).  Prison officials allegedly refused to
transfer Plaintiff in retaliation for Plaintiff's lawsuit against the
warden (id., p. 3).  In a section of the First Amended Complaint
entitled "Request for Relief," Plaintiff appeared to allege that he
needed a single cell because of his age and vision impairment (First
Amended Complaint, "Prayer for Relief," p. 3).  In a section entitled
"Conclusion," Plaintiff additionally alleged that prison officials
kept Plaintiff's legal mail for 81 days, and that prison officials
were not following a "timely toilet" policy whereby prisoners were
entitled to flush their toilets twice in five minutes (First Amended
Complaint, "Conclusion," p. 1).  Sprinkled throughout the pleading
were general allegations of misconduct and corruption.  It was unclear
what relief Plaintiff sought.

///

///

1           **SUMMARY OF ALLEGATIONS OF SECOND AMENDED COMPLAINT**

2

3      The Second Amended Complaint ("SAC") again names as sole

4 Defendant Warden Dexter in her individual capacity.  The pleading

5 purports to contain two claims for relief, but each claim makes the

6 same or similar allegations.  Plaintiff alleges violations of the ADA,

7 Equal Protection, the Eighth Amendment and Due Process (SAC, p. 5).

8

9      Plaintiff alleges that he has a prosthetic right eye and

10 permanent vision impairment (SAC, p. 5).  Plaintiff alleges he has

11 been exposed to excessive heat causing "Burning" to Plaintiff's left

12 eye (SAC, "Claim One" attachment, p. 1).  Plaintiff contends that his

13 left eye has begun to blur and oscillate, hindering Plaintiff's

14 vision, and that he feels a "big pain" and a "big weight" under his

15 head (id., p. 3; "Claim Two" attachment, p. 1).  Plaintiff's cell

16 allegedly does not have sufficient ventilation (id., p. 2).

17

18      Plaintiff further alleges that, although Plaintiff assertedy is a

19 Puerto Rican classified as "other," unidentified prison officials

20 allegedly placed Plaintiff in a cell with an inmate who assertedly was

21 a Mexican gang member (id.; "Claim Two" attachment, p. 2).  Plaintiff

22 alleges that people such as Plaintiff's cellmate "always are

23 troublemakers" and get in fights, and that a gang member's cellmate

24 can be accused falsely of participating in the gang member's

25 activities (SAC, "Claim Two" attachment, p. 2).  Plaintiff alleges he

26 is not a gang member, and wants a single cell to "avoid problems"

27 (SAC, "Claim One" attachment, p. 2).

28 ///

1    Plaintiff also alleges that prison officials read his legal mail,

2    kept his "legal mail," apparently Plaintiff's prison grievance, for

3    81 days (SAC, "Claim One" attachment, p. 1; "Claim Two" attachment,

4    p. 2).  The Second Amended Complaint alleges Plaintiff was provided

5    assertedly inadequate and "bad" food which allegedly caused an

6    elevation in Plaintiff's cholesterol level (SAC, "Claim One"

7    attachment, p. 2; "Claim Two" attachment, p. 3).  Plaintiff also

8    includes conclusory allegations of retaliation and race discrimination

9    (see SAC, p. 5; "Claim One" attachment, pp. 2-3; "Claim Two"

10   attachment, pp. 1, 3).

11

12   Plaintiff does not seek damages, but requests injunctive relief

13   (see SAC, "Claim One" attachment, p. 2; "Request for Relief," pp. 1-

14   2).  Plaintiff seeks a transfer to a prison medical facility and a

15   "revaluation" of Plaintiff's left eye, but does not otherwise indicate

16   what other injunctive relief, if any, he desires on his other claims

17   (see SAC, "Claim One" attachment, p. 2; "Claim Two" attachment, p. 3).

18

19                              **DISCUSSION**

20

21   **I.   Civil Rights Claims**

22

23   The Second Amended Complaint fails to state a claim under 42

24   U.S.C. section 1983 against Defendant Dexter, sued in her individual

25   capacity only.  An individual defendant is not liable on a civil

26   rights claim unless the facts establish the defendant's personal

27   involvement in the constitutional deprivation or a causal connection

28   between the defendant's wrongful conduct and the alleged

constitutional deprivation.  <u>See</u> <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978).  Plaintiff may not sue any supervisor on a theory that the supervisor is liable for the acts of his or her subordinates.  <u>See</u> <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981).  A supervisor may be held liable in his or her individual capacity "for [his or her] own culpable action or inaction in the training, supervision or control of [his or her] subordinates."  <u>Watkins v. City of Oakland, Cal.</u>, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991)).  To state a claim against any individual Defendant, Plaintiff must allege facts showing that the individual Defendant participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it.  <u>See</u> <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  The Second Amended Complaint contains no allegations showing Defendant Dexter's personal involvement in any alleged constitutional violation.

    As the Court previously advised Plaintiff, prison officials can violate a prisoner's Eighth Amendment right to be free of cruel and unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th

1   Cir. 1997).  "A 'serious' medical need exists if the failure to treat
2   a prisoner's condition could result in further significant injury or
3   the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith,
4   974 F.2d at 1059 (citation omitted); see also Lopez v. Smith, 203 F.2d
5   1122, 1131 (9th Cir. 2000) (en banc) (examples of "serious medical
6   needs" include "a medical condition that significantly affects an
7   individual's daily activities," and "the existence of chronic and
8   substantial pain"; citation and internal quotations omitted).
9
10      To show deliberate indifference, a plaintiff must show that
11  prison officials knew of and disregarded an excessive risk to inmate
12  health or safety.  Farmer v. Brennan, 511 U.S. at 837.  The official
13  must have been aware of facts from which the inference could be drawn
14  that a substantial risk of serious harm existed, and must have also
15  drawn the inference.  Id.  Thus, inadequate treatment due to accident,
16  mistake, inadvertence, or even gross negligence does not amount to a
17  constitutional violation.  Estelle v. Gamble, 429 U.S. at 105-06;
18  McGuckin v. Smith, 974 F.2d at 1060; Wood v. Housewright, 900 F.2d
19  1332, 1334 (9th Cir. 1990).
20
21      Plaintiff again appears to allege that conditions at ISP have
22  caused injury to Plaintiff's eye.  However, Plaintiff again fails to
23  allege that any prison official, much less the warden, knew of, and
24  deliberately disregarded, any risk of harm to Plaintiff's sight caused
25  by conditions at the prison.
26
27      Plaintiff's allegations that he is entitled to a single cell
28  again do not state a claim for relief.  As the Court previously

1  advised Plaintiff, a prisoner alleging that prison officials failed to

2  protect him or her from a risk of harm from fellow inmates must show

3  that the prison officials acted with "deliberate indifference" to a

4  substantial risk of harm to the prisoner.  Farmer v. Brennan, 511 U.S.

5  at 837.  Plaintiff again has not alleged facts showing that Defendant

6  Dexter or any prison official was deliberately indifferent to a

7  serious risk of harm to Plaintiff if Plaintiff did not receive single-

8  cell housing.  Plaintiff's speculative allegations that Mexican gang

9  members are "troublemakers" who allegedly get in fights and who

10  assertedly can enmesh allegedly innocent cellmates in wrongdoing do

11  not suffice to allege that Plaintiff's assignment to a double cell

12  created a serious risk of harm to Plaintiff.  See Williams v. Wood,

13  223 Fed. App'x 670, 671 (9th Cir.), cert. denied, 128 S. Ct. 108

14  (2007) ("speculative and generalized fears of harm at the hands of

15  other prisoners do not rise to a sufficiently substantial risk of

16  serious harm to [plaintiff's] future health").

17

18      As the Court previously advised Plaintiff, Plaintiff's general

19  allegation that the food is "bad" states no cognizable claim for

20  relief.  Plaintiff does not allege the food is tainted or provides

21  insufficient nutrition.  See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th

22  Cir. 1993) ("The Eighth Amendment requires only that prisoners receive

23  food that is adequate to maintain health; it need not be tasty or

24  aesthetically pleasing.").

25

26      Plaintiff's retaliation claims are insufficient.  Prison

27  officials may not retaliate against inmates who exercise their First

28  Amendment rights.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995);

1   Bradley v. Hall, 64 F.3d 1276, 1281 (9th Cir. 1995).  "A prisoner

2   suing prison officials under section 1983 for retaliation must allege

3   that he was retaliated against for exercising his constitutional

4   rights and that the retaliatory action does not advance legitimate

5   penological goals, such as preserving institutional order and

6   discipline."  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003)

7   (citations and internal quotations omitted).  Plaintiff's conclusory

8   allegations of retaliation are insufficient.  See Williams v. Wood,

9   223 Fed. App'x at 671-72 (affirming dismissal of conclusory

10  allegations of retaliatory transfer "because these claims lacked

11  factual support demonstrating a causal link between the civil actions

12  [plaintiff] has filed and the denial of a transfer"); Wise v.

13  Washington State Dep't of Corrections, 244 Fed. App'x 106, 108 (9th

14  Cir. 2007), cert. denied, 128 S. Ct. 1733 (2008) (prisoner's

15  conclusory allegations of retaliation insufficient, "without

16  supporting facts connecting the defendants to his litigation

17  activities").[3]

18

19       The Second Amended Complaint contains conclusory allegations of

20  race discrimination.  "Prisoners are protected under the Equal

21  Protection Clause of the Fourteenth Amendment from invidious

22  discrimination based on race."  Wolff v. McDonnell, 418 U.S. 539, 556

23  (1974).  To allege an equal protection violation, Plaintiff must

24  allege he was intentionally treated differently from others similarly

25  situated and that there was no rational basis for the difference in

26  ─────────────────

27       [3]   The Court may cite unpublished appellate opinions
     issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir.
28  Rule 36-3(b); Fed. R. App. P. 32.1(a).

treatment.  <u>See</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564

(2000); <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194-95 (9th Cir. 1998),

<u>cert denied</u>, 525 U.S. 1154 (1999).  The Second Amended Complaint

contains no such allegations.  Therefore, Plaintiff has failed to

plead a cognizable Equal Protection claim.  <u>See Hamilton v. Adamik</u>,

2007 WL 2782840, at *4 (N.D. Cal. Sept. 24, 2007) (prisoner's

conclusory and ambiguous allegations of race discrimination

insufficient).

     Plaintiff's allegations concerning his alleged legal mail are

unclear.  To the extent Plaintiff alleges that prison officials

inspected a grievance or grievances Plaintiff submitted to prison

authorities, the Second Amended Complaint states no cognizable claim

for relief.  <u>See O'Keefe v. Van Boening</u>, 82 F.3d 322, 325 (9th Cir.

1996) (upholding regulations allowing prison mailroom officials to

read "grievance mail" sent to government agencies); <u>Witherow v. Paff</u>,

52 F.3d 264, 266 (9th Cir. 1995) (prison officials may perform visual

inspection of prisoner mail sent to state officials to check for

offensive or dangerous materials).

     To the extent Plaintiff alleges that interference with his legal

mail violated Plaintiff's right of access to the courts, Plaintiff's

claim is insufficient.  A prisoner claiming a violation of the right

of access to the courts must demonstrate that the prisoner has

standing to bring the claim by showing the defendant's actions caused

the prisoner to suffer "actual injury" in pursuit of either a direct

or collateral attack upon a conviction or sentence or a challenge to

the conditions of confinement.  <u>Lewis v. Casey</u>, 518 U.S. 343, 349

1   (1996).  Under <u>Lewis v. Casey</u>, a prisoner must show that an action was

2   "lost or rejected," or that presentation of a non-frivolous claim was

3   or is being prevented, as a result of the alleged denial of access.

4   <u>Id.</u> at 356.  Plaintiff does not plead he suffered any "actual injury"

5   within the meaning of <u>Lewis v. Casey</u>.

6

7      To the extent Plaintiff contends his prison grievance or

8   grievances were mishandled, Plaintiff fails to state a claim for

9   relief.  "[A]n inmate has no due process rights regarding the proper

10  handling of grievances."  <u>Wise v. Washington State Dep't of</u>

11  <u>Corrections</u>, 244 Fed. App'x at 108; <u>see also</u> <u>Ramirez v. Galaza</u>, 334

12  F.3d 850, 860 (9th Cir. 2003), <u>cert. denied</u>, 541 F.3d 1063 (2004).

13

14     Also, as the Court previously advised Plaintiff, Plaintiff's

15  vague and conclusory allegations of misconduct and "corruption" are

16  insufficient to state a claim for relief.  <u>See</u> <u>Ivey v. Board of</u>

17  <u>Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

18

19  **II.  <u>ADA Claim</u>**

20

21     Plaintiff's ADA claim again is insufficient.  Title II of the ADA

22  provides that "no qualified individual with a disability shall, by

23  reason of such disability, be excluded from participation in or be

24  denied the benefits of the services, programs, or activities of a

25  public entity, or be subjected to discrimination by any such entity."

26  <u>See</u> 42 U.S.C. § 12132.  Title II covers inmates in state prisons.

27  <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 209-12

28  (1998).  "In order to state a claim under Title II of the ADA, a

plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some of the public entity's services, programs, or activities; (3) he was either excluded from participation or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability." O'Guinn v. Lovelock Correctional Center, 502 F.3d 1056, 1060 (9th Cir. 2007) (citation, internal quotations and brackets omitted).  The ADA defines a person with a "disability" as one who: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. See 42 U.S.C. § 12102(2).  Major life activities include "seeing."  29 C.F.R. § 1630.2(i).  However, the mere fact that an individual has sight in only one eye does not establish that he or she is a person with a disability under the ADA.  See Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 566-67 (1999).  Rather, to qualify an individual as a person with a disability, the lack of sight in one eye must "substantially limit" the individual's ability to see.  See E.E.O.C. v. United Parcel Serv., Inc., 306 F.3d 794, 797 (9th Cir. 2002), amended, 311 F.3d 1132 (9th Cir. 2002) ("we hold that for a monocular individual to show that his impairment is a substantial limitation on the major life activity of seeing, the impairment must prevent or severely restrict use of his eyesight compared with how unimpaired individuals normally use their eyesight in daily life").  Although Plaintiff alleges that his vision is blurred, Plaintiff again fails to allege facts showing his condition imposes any such substantial limitation on his ability to

13

1  see.[4]

2

3      Additionally, Plaintiff may not assert an ADA claim against

4  Defendant Dexter in her individual capacity.  The ADA provides a

5  remedy against a "public entity," not against individual public

6  officials in their individual capacities.  See Brewer v. Wisc. Bd. of

7  Bar Examiners, 270 Fed. App'x 418, 421 (7th Cir. 2008); Williams v.

8  McLemore, 247 Fed. App'x 1, 8 (6th Cir. 2007); Garcia v. S.U.N.Y.

9  Health Services Center, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v.

10  City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc),

11  cert. dismissed, 529 U.S. 1001 (2000); Green v. Adams, 2008 WL

12  1766737, at *3 (E.D. Cal. Apr. 16, 2008); Curry v. Tilton, 2007 WL

13  2778363, at *3 (N.D. Cal. Sept. 21, 2007); Thomas v. Nakatani, 128

14  F. Supp. 2d 684, 691-92 (D. Hawai'i 2000), aff'd on other grounds, 309

15  F.3d 1203 (9th Cir. 2002); see also Vinson v. Thomas, 288 F.3d 1145,

16  1156 (9th Cir. 2002), cert. denied, 537 U.S. 1104 (2003) (plaintiff

17  could not sue public official in his or her individual capacity under

18  42 U.S.C. section 1983 for violations of either the ADA or the

19  Rehabilitation Act).

20

21                               ORDER

22

23      The Second Amended Complaint is dismissed with leave to amend.

24  If Plaintiff still wishes to pursue this action, he is granted thirty

25

26  _____

27      [4]    As the Court has noted previously, exhibits attached to
    the original Complaint suggested that Plaintiff's central visual
28  acuity is 20/20 with corrective lenses.

1  (30) days from the date of this Order within which to file a Third

2  Amended Complaint.  The Third Amended Complaint shall be complete in

3  itself.  It shall not refer in any manner to any prior complaint.

4  Plaintiff should not attempt to add additional parties without leave

5  of Court.  See Fed. R. Civ. P. 21.  Failure to file timely a Third

6  Amended Complaint in conformity with this Memorandum and Order may

7  result in the dismissal of this action.  See Simon v. Value Behavioral

8  Health, Inc., 208 F.3d 1073, 1084 (9th Cir.), amended, 234 F.3d 428

9  (9th Cir. 2000), cert. denied, 531 U.S. 1104 (2001), overruled on

10  other grounds, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert.

11  denied, 128 S. Ct. 464 (2007) (affirming dismissal without leave to

12  amend where plaintiff failed to correct deficiencies in complaint,

13  where court had afforded plaintiff opportunities to do so, and where

14  court had given plaintiff notice of the substantive problems with his

15  claims); Plumeau v. School District #40, County of Yamhill, 130 F.3d

16  432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where

17  further amendment would be futile).

18

19      IT IS SO ORDERED.

20

21  DATED: September 4, 2008.

22

23

FLORENCE-MARIE COOPER
24  UNITED STATES DISTRICT JUDGE

25  Presented this 29th day of

26  August, 2008, by

27

CHARLES F. EICK
28  UNITED STATES MAGISTRATE JUDGE

15